We've got four arguments today. The first is Bennett v. New York. I'm told that all counsel are present, but let me just make sure before each argument. For the appellant, we have Ms. Bellantoni. Yes, good morning, Your Honor. Good morning. You can see and hear everybody all right? Yes. All right. And for the appellee, we have Mr. Posner. Yes, sir. Thank you. And Mr. Posner, you can see and hear us okay? Yes. Good. All right. So, Ms. Bellantoni, you've reserved three minutes for rebuttal, so you've got seven minutes now out of the gate. You may proceed. Thank you, Your Honor. May it please the court. Affirming the district court decision in this case will eviscerate post-deprivation due process. The district court disregarded established precedent whereby an innocent property owner is required to have notice and an opportunity to be heard. The court's decision eliminates the notice requirement altogether by finding that the police are not required to give notice. Excuse me, what notice? You're talking about notice of what? What does the notice have to be? Well, in the circumstances of this case, notice would be the police advising Mrs. Bennett as to the reason why they're refusing to return her property, so that she has an opportunity to address those concerns. And if they are still not inclined to return her property, then they're required to seek a neutral fact finder or magistrate, file an action in the court where they would have the burden to show that they were entitled to retain her property. But she knew. She knew the property was seized. She knew by whom, and she knew why, right? It's because her husband was a convicted felon. Certainly. So, the district court conflated knowledge of why the firearms were initially seized, which was Mr. Bennett's conviction and his status as a prohibited person. Which you're not challenging, right? For purposes of this appeal and for the district court, no, we're not challenging that. There was a handgun that was seized, that was Mrs. Bennett's, and had more inquiry been done by the deputy at the moment, he would have learned that Mrs. Bennett had the ability to secure the firearms from Mr. Bennett. But assuming that the initial Mr. Bennett was lawful, which it was, the district court failed to view that seizure in the context of Mrs. Bennett. So, when we're looking at the privilege to retain under the Fourth Amendment... Actually, at the time of the seizure, she didn't object, right? She was present at the time of the initial seizure. So, you're talking about later on when she notifies the county that she has an interest in the guns, and they retain them, that they should have notified her at that point, or triggered some kind of process at that point. So, my client is from the Philippines. Yes, she was home. There was a deputy at her door telling her they had a court order to seize the firearms. So, she respectfully didn't feel as if she was in a position to object, but later did contact and did understand and was told that they were being seized because her husband had been convicted of the DWI felony. So, knowing that he was a convicted felon, there was no objection to the seizure for those purposes. But when she did contact the sheriff's office to ask why they wouldn't be returned to her because she has no prohibitors, her pistol license with regard to the handguns was valid and in effect, and she had no prohibitors to the long gun possession. She was informed that there was a policy that no firearms would be returned because she lived with a convicted felon. Detective Letizia told her in March of 2017 that if you continue to live with your husband, you can't possess your firearms and they won't be returned to you. Now, with regard to the 14th Amendment, with regard to the Fourth Amendment claim, that is a fact in dispute. The court resolved that factual dispute improperly. And so, the Fourth Amendment claim should have continued and not been dismissed. But I will direct the court's attention to Detective Daniel's own notes in the appendix at A and it specifically says, per Detective Letizia, deny, Detective Daniels is the property detective, deny because Mrs. Bennett admitted she lives with a convicted felon. So, that supports the blanket policy of not returning firearms when an individual is living with a prohibited person. But Ms. Valentine, let me start to interrupt you, but why is this a Fourth Amendment claim? Well, first of all, I'm not sure why we're even in the Fourth Amendment. And I do recognize, Your Honor, that most of the cases in the Second Circuit, the due process argument swallows up the Fourth Amendment claim. So, I do recognize that. I would propose to the court that, in the context of a seizure  Mr. Bennett, that the retention vis-a-vis Mrs. Bennett of her property may be looked at differently. And so, that would give rise to an analysis of unlawful retention of the property of the innocent owner. But I do recognize that that is generally the case in the Second Circuit. It's improper to keep the guns from her because she was living with a felon. You're just saying she should have been notified about the option of, under the to get a safe and keep them separate, right? So, it's not a notice related to the propriety of the seizure, but about her options for getting them back. So, the district court was incorrect in stating that we were looking, or that Mrs. Bennett was looking for legal advice as to how to comply with the SAFE Act. That is not the case. Mrs. Bennett contacted the Sheriff's Office to get her back. And when they told her, you can't have your property because you live with a felon, there was no mention of any safe storage. There was no mention of safe storage until after we filed the lawsuit in October of 2017. But had she contacted a lawyer, the lawyer presumably would have explained to her lawyer. She would have gotten legal advice and would have explained that to her, no? Well, she did contact a lawyer. She contacted me. And I wrote a letter to the detective Letizia. That letter can be found at A519 in the appendix. So, she got your advice. She did what the law requires. She got her guns back. And, you know, things happily ever after, no? Well, the problem here is that there's no evidence in the record of any notice of the reason, assuming that we view this in the light most favorable to the county, that they never spoke with her. Detective Letizia did not tell her that their policy was not to return the guns because she lived with her husband, who had a prohibitor. In May, when we brought their attention that she was told that was the reason for the retention of the firearms, the county was silent. The Sheriff's Office never reached out. They still provided no notice. If they're alleging that safe storage was the issue, they were obligated to say, it would have been very simple, contact my office, send a letter out saying our concern is safe storage. Let us know that she can safely store the firearms and we'll return the firearms. Safe storage was never an issue. The issue was a blanket policy of not returning firearms to an individual who lives with a prohibited person. Just to clarify what you said, you said you sent a letter in May 2017 that you would return the guns? Is that what you just said? Safe storage was not brought up because that was not the reason given to Mrs. Bennett for not returning her firearms. And once the policy, and so notwithstanding their failure to respond to the letter to tell us their concern, once the county policy was passed by the law department in August of 2017 that mandated the gun to be found at A506, the defendants still did nothing. They still didn't provide notice and they still did not reach out and we were forced to file a lawsuit in October. Right. But again, it was clear that the guns were seized because of Mrs. Bennett's husband's felony status. They took guns from a storage locker where he had a key, right? Yes. Mr. Bennett did have access or did have a key, but Mrs. Bennett's ability to safely store was not impeded. She had the ability to hide the key from him or to make sure that he didn't have access. But she didn't do those things or she didn't advise the police that she had done or the sheriff's that she had done those things. I mean, there's a statute that makes clear what you have to do. And as long as she had been aware of the statute and provided a letter to the sheriff's office saying that she had done the things that are required by the statute, she'd get the guns back, right? Two things, your honor. First, the burden is not on the property owner. The burden is on the sheriff's department to notify the property owner about what their concerns are. Second, the district court was incorrect in stating that New York law prohibits an individual who resides from a convicted felon from possessing and ensuring that the person does not have access. There is no prohibition. There is no condition precedent to the return of her firearms. She doesn't have to promise to comply with the law before her firearms are returned. And once she, if she fails to comply... Wait a minute. She lives with a conviction of guns, actual or legal. And you're saying that, so they took the guns from the house for that reason, but the sheriff has to tell your client what it will take to get the guns back? That's what you're saying? The constitution requires that? Due process requires them to tell her what their reason is for not returning them. It is very simple for them to say... The reason for not returning them is that she lives with a convicted felon. And so he will therefore possess the guns that she has legal ownership of. That was not stated to her. And that was not stated to her. That's what the law says. That's what the court order indicated, right? Well, the court order only revoked his pistol license. There was no order allowing for the seizure of the long guns. And there was no order allowing for the seizure of her handgun. But the... Apologies. No, we're well over, but you've got three minutes for rebuttal. Thank you. Let's hear from Mr. Posner. Mr. Posner? I think you're still muted. Mr. Posner, you're still on mute. Can you hear me now? Yes. Okay. Oh, thank you. I apologize. Of course, I represent the appellees in this matter, Your Honor. And I'm not going to spend time on the Fourth Amendment either, because we certainly don't feel that this is a Fourth Amendment case. It's a 14th Amendment claim, and it was decided properly by the district court. As has been made fairly clear, I think it's evident that the weapons, the guns were seized pursuant to the order of revocation and the state and federal statutory bars to felons owning or possessing a firearm, which includes the long guns. They don't need a separate order, because there is no permitting requirement for long guns. It's a statutory prohibition against felons possessing long guns. Mrs. Bennett had a partial or 50% or joint, whatever phrase we want to put on her ownership. But of course, her ownership is necessarily burdened by any restrictions on his ability to access those weapons. She could not, for instance, have a handgun in her nightstand. She legally owned it. It has to be safely stored under the Safe Storage Act. And the reason is even if it was her handgun. So there are statutory prohibitions. Since they were registered at 50-50, the county would have known that she had an interest in the guns, right? No, the county did not know of her interest. As I think it was mentioned earlier, she did not say a word during the seizure. She didn't say, hey, these guns are on my pistol permit, or I'm a 50% owner of any of these weapons. So the deputy who took them... But you went to the house because you knew that there were guns registered to him. Wouldn't those records also have shown that the guns were registered to her as well? No, it would be a completely different record. And we put in the record on this appeal that there's 30,000 licensed pistol permittees in the county of Dutchess. And so it's not something that they would know unless they were directed to get that information. They would not independently be obligated to determine if anybody else in the household was entitled to have weapons when they went to the... So when they went to the house, if she had in fact said, these are registered to me as well, I have an interest in the guns, what would the officers have said at that point? Well, at that point, he certainly still would have had probable cause to take the weapons with the order of revocation and the statutory prohibition on the long guns. If she had raised the fact that she had an interest in the weapons, he probably or should have, I would suggest, although I'm not sure it was constitutionally mandated to do that, say, contact the sheriff's office and let them know this. And then the sheriff's office probably should have or would have, although I don't know if they're constitutionally mandated to do this, said, the Safe Storage Act will allow you to get your weapons back. Show us that you have a safe storage that he does not have access to. But they didn't. She would have gotten her weapons back. But she didn't do that. She did come... I'm sorry, I'm speaking over... The sheriff's office did say she had an interest in the guns, but they did not advise her of her ability to retain them pursuant to the Safe Storage Act, right? When they took the weapons, they had no reason to even know she had an interest in them. Now, in the record, there's a fact dispute as to whether she made this phone call in March, but there's no dispute that she didn't, in that phone call, say, I have safe storage. And in the letter that counsel has spoken about that's dated May 30th, addressed to the sheriff, it doesn't raise the safe storage either. And certainly at that point, when she's represented by counsel, she would certainly be on notice, if you will, of what the requirements are. And if that letter had said, my client has safe storage, we'd have a different case. Then this county would have a factual predicate for having to decide whether they should keep the weapons or not. And if they decide it's not sufficient or what have you, or they dispute it, if they went there and said, no, your safe's too small, or whatever fact dispute there was, then they would have, under the later decided case I would point out under Panzella, this court decided in mid-July, an obligation to provide a hearing. But until there's a factual dispute, they don't have that obligation. The facts supporting the seizure never changed. The order of revocation was valid. The conviction was valid. You said a moment ago that if she had contacted the sheriff's office or she said that she had interest in the guns, the sheriff's office would express to her that she could get it back if she maintained a safe and separated it from her husband. But the record seems to indicate that when she did raise that, the sheriff's office did not tell her. No, I didn't say, I said they could have, and one might say they should have, but I don't think they're constitutionally mandated to do that. If she said I have safe storage, then I believe they would have had an obligation because then there would be no statutory reason not to give the weapons back to her, and if they felt there was a factual dispute, some reason that she could not get the weapons back, it would then become the burden on the holder of the weapons, the sheriff, the police, to give her the due process to resolve that fact dispute, because now you have a, quote, risk of erroneous deprivation. But until she presented that fact dispute, there's no risk of erroneous deprivation because there's no facts in dispute. The seizure on October 7, 2016, was completely lawful and unchallenged. So I think your point is, Mr. Posner, that a representation of legal ownership in the guns doesn't matter. Exactly. It didn't change the sheriff's right to retain the weapons. Correct. Absolutely, Your Honor. That's only half the story. Sorry. I guess also saying then is that it's not the sheriff's job to tell her the details of the Safe Storage Act or to explain how to go about getting the guns back, right? Yes, that's exactly how we briefed the case, Your Honor. I would also like to point out one other thing about this, quote, blanket policy that counsel spoke about. There is no blanket policy. The testimony from the chief deputy, as well as from Letizia at his deposition, was that a felon can't have a weapon by statute, but subject to the safe storage, they can get the weapons back. So the policy as described in the record is not a blanket policy that there can't be a weapon in a home where a felon lives. And the county did have a policy of not telling people about the Safe Storage Act and just kind of retaining the weapons, but then maybe responding once somebody brings it up themselves. Would that be a problem? I think making a requirement on a government agency, whether it's the Department of Motor Vehicles or whoever you are, to affirmatively tell people what the law is raises some issues about misinformation or, you know, we all know the law is complicated, Your Honor, and if the law is out there, it's the obligation of the citizen to comply with it and assert that they are in compliance with it and they can get counsel. This information is readily available. We point it out in the record. You're saying when the citizen asks the county, you know, what she can do to get her guns back, she shouldn't rely on what they say because it might be incomplete or they might not know. Well, we're saying she demanded her weapons back in May 30th because she's a part owner. I don't think she even said she's a part owner, but it doesn't matter. She asserted and she had a property interest in those weapons, somewhat limited than full ownership, but certainly she had a property interest in it. Again, as I say, they certainly could have said, hey, get a safe, like once the lawsuit started and I got involved and there's a request for preliminary relief and it seems like a big brouhaha over very little, just get a safe. The record shows that Mr. Bennett said, I knew the moment I was convicted, if we got a safe, we could have the weapons back. The reason I didn't get a safe is it was too expensive. That's what Mr. Bennett said. He got all this advice from his criminal defense attorney. Before he pled guilty, he knew exactly what was going to happen. He knew all his weapons were being taken and he knew how to get them back. All this information is out there. It's available. It's on the NRA website and I only point that out because Mrs. Bennett was a member of the NRA and told us that in her deposition, was actually a pistol safety licensed safety instructor and could have had all this information. Just let us know. The Panzella case, which again was decided in the summer of 17, which was the family court permitting the seizure of weapons, was dissipated when the family court proceeding against the owner of the guns was dismissed and now there's no longer an order and the sheriff wouldn't give the weapons back. This court said under those circumstances, making the gun owner go to court, starting article 78 to get an order when there is no longer any lawful basis for holding the weapons is improper. The whole thing depends on Mrs. Bennett coming forward saying that she has a safe. So if she said she had a safe and the county still refused to return the weapons, she would be entitled to some kind of a due process hearing. But you're saying as far as the county knew, the predicate for keeping weapons was still valid. There was no factual basis to hold the hearing. To do the legal research to trigger the requirement for a hearing. She had to present some information to the county that challenged their right to have, to keep the weapons and some fact dispute, which would be their burden to schedule and pay for, if you will. Speaking of triggers, is it so that trigger locks are sufficient that you do not need a safe? Yes. That's my reading of the statute. So that's A, one answer I can say. But it also triggers the fact that asking laymen to give legal advice like that might be difficult because if Mrs. Bennett or any other citizen asked someone, well, what does the Safe Storage Act require me to do? And the person gives them the wrong advice or doesn't say trigger locks and they think they're in compliance with it and then all of a sudden they've committed a misdemeanor when they're not. The county needs to administer these laws, right? So it's a little difficult to tell people what the laws require. So isn't there somebody at the county who knows what the requirements are? Well, I'm sure there are many people at the county who know what the requirements are. The question is not who knows what the requirements are. The question is does the county have to, on these facts, explain what the requirements are to a person in Mrs. Bennett's situation when they have no And giving her back the weapons before they know she's in compliance with the law is something that is not going to happen. They're not going to give the weapons back, putting her in jeopardy of a felony and him in a misdemeanor. And I don't know what exactly it would be for him if he was deemed in possession of the weapons. I'm sure it wouldn't be good. So obviously they're not going to do that until they have a reason to know. And until she says to them the very simple thing, this letter could have included we have safe storage, but it doesn't. Okay. Thank you very much, Mr. Posner. We'll now hear from Ms. Bellantoni for three minutes. Maybe we should start there. Ms. Bellantoni, you say at page 12 of your brief you concede that the officers were not obligated to instruct your client on the law. But I guess isn't that really what you're asking them to do? No. In fact, it's not. So when you talked a few moments ago about seeking legal advice about what does the SAFE Act require me to do as far as storage, that would be conceivably giving legal advice. We're not asking for legal advice. The burden is not on the innocent property owner to come forward with any information. The burden is on the government who is retaining property that belongs to an innocent owner to tell them what the reason is. Wait a minute. These guns you concede were legally seized. From Mr. Bennett, yes. And they were seized because Mr. Bennett is not allowed to possess firearms. Correct. The assertion by Mrs. Bennett that she has an ownership in these guns doesn't change any of that, does it? So when the government is presented with an innocent owner, then the issue is are there any reasons? First, let her know what the reason is they're not returning the property to her. If they have a reason, they need to let her know what the reason is. If their reason was safe storage, then as Mr. Posner initially said, they should have told her we have an issue and we want to make sure that you have safe storage available. The burden is not on her. The reason is she cohabits with a convicted felon who's not permitted to possess firearms. That's the reason, right? They didn't say that. There's no notice in the record at all. What they said was as long as you live with him, you can never have them back. Period. There was no storage issue mentioned at all. Now, they deny saying that. So if we look at it from a different perspective, once they received the letter in May where we say you told us your blanket policy was never to return guns, never, not with their safe storage, but never, never to return guns if you cohabit or cohabitate with a prohibited person, and they were silent on that. They didn't contact to say. Mrs. Bennett brought up that she had safe storage. Was there any issue with getting the return of the guns from the county? So safe storage was never mentioned until after the lawsuit was filed in October and not until the county had retained an attorney, and then it was a safe storage issue. It switched from a blanket policy to an issue of safe storage. And I submit that the government still, because Mrs. Bennett had no prohibitors to firearm possession, they were still required to release the firearms to her, and it's now her obligation. She could have taken them right from the sheriff's office, picked them up, and brought them to a gun shop or brought them to a separate location. They had no information at all until this lawsuit was filed about the manner in which Mrs. Bennett was storing her firearms or whether she had the ability, which she did, to store them from Mr. Bennett. If the weapons are not themselves prohibited, the county should not retain them but come up with a way to return them that wouldn't allow, in this case, her husband to have access to them. Like told her to keep them at a gun shop or return them to you but keep it at a gun shop. Is that what you're saying? I don't believe that the government has the authority to tell people how to or what to do with their property. I think that in this case, the police had an obligation to assess whether they had a legal right or entitlement to retain the property, and if they did not, then the property needed to be returned. But at the very least, they needed to give her notice of what their issue was so that she could be, you know, present. If it was safe storage, they should have told her that. They did not tell her that. And she would have had the opportunity to say, I have the ability to safely store the firearms. But between March and the institution of a lawsuit, even in the face of the letter, the attorney letter, they were silent on that issue. And so, go ahead. Okay. Well, thank you. Thank you so much. Thank you both. We will reserve the decision.